# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### EL DORADO DIVISION

**FLORA MOSELEY SMITH**                                                    **PLAINTIFF**

**VS.**                              **Case No. 03-CV-1186**

**CHASE MANHATTAN MORTGAGE**
**CORPORATION**                                                          **DEFENDANT**

### MEMORANDUM OPINION

This putative class-action lawsuit involves Plaintiff Flora Moseley Smith's allegations that Defendant Chase Manhattan Mortgage Corporation ("Chase") breached her mortgage agreement and violated certain provisions of the Real Estate Settlement Procedure Act, 12 U.S.C. § 2601, et seq. (RESPA) when it charged her a five-dollar ($5.00) fax fee in connection with the refinance of her home mortgage.  Before the Court is Chase's motion for summary judgment. (Doc. 34).  Smith has filed a response.  (Doc. 37).  On January 30, 2006, the Court held a hearing relative to the motion for summary judgment.  Appearing on behalf of Smith and the putative class was attorneys Eric Roberson and Donald Jones of Dallas, Texas.  Appearing on behalf of Chase was attorneys Danielle Szukala of Chicago, Illinois, and Matthew Shepherd of El Dorado Arkansas.  At the conclusion of the hearing the Court took the motion for summary judgment under advisement and directed the parties to submit any supplemental briefs to the Court.  The parties have submitted their supplemental briefs.  (Doc. 65)(Doc. 66).  The Court finds this motion ripe for consideration.

After Chase filed its motion for summary judgment, Smith filed a motion for class certification, under seal.  (Doc. 43).  By Order dated November 11, 2005, the Court agreed to decide the motion for summary judgment first and then, if necessary, decide the issue of class certification.  (Doc. 59).

## I.    Background

The following facts are not disputed by Smith (or disputed and the dispute is noted) and set the background for this lawsuit.  Smith lived in a home located at 1600 Calion Road, in El Dorado, Arkansas.  On May 26, 1994, Smith entered into a Federal Housing Administration (FHA) note and mortgage for this home with Source One Mortgage Services Corporation. Sometime after this loan was originated, Chase became the loan's servicer.  It is unclear whether Chase also purchased the loan.  In May 2003, Smith sought to refinance her loan through First Financial Bank, in El Dorado.  Smith spoke with Julie Schumacher, a loan officer at First Financial Bank, regarding the loan's refinance.  In turn, First Financial Bank contacted Joseph Nixon at Union Abstract Company to prepare the title work with the loan's refinance and conduct the loan's closing.  In connection with the loan closing, Nixon gathered all information and paperwork necessary to complete the loan closing, prepared a Housing and Urban Development (HUD)-1 Settlement Statement, obtained the payoff letters on any existing liens, and prepared the necessary title work.

During the loan closing, Nixon contacted Chase by telephone to request Smith's payoff statement.  It is unclear and disputed  whether Nixon spoke with a live agent or utilized a computerized-voice interface system to request the payoff statement.  In order to obtain the payoff statement, Nixon needed Smith's telephone and social security numbers.  During this telephone call, Nixon requested that Chase send him the payoff statement by facsimile.  Chase then faxed Nixon Smith's payoff statement.  Chase also sent the payoff statement to Smith at her residence by U.S. Mail.

It is Nixon's practice to request that lenders and loan servicer send payoff statements by facsimile, because he wants to obtain the payoff statements on an expedited basis.  Nixon was aware that he was incurring a fee on Smith's behalf when he requested the payoff statement to be sent by facsimile, and Nixon was aware that Chase charged a fax fee.

The payoff statement provides:

TOTAL AMOUNT SECURED BY THE MORTGAGE 6/01/2003 $56,787.64

FACSIMILE FEE     $     5.00

TOTAL AMOUNT OWED INCLUDING SERVICE FEES $56,792.64

Neither Smith nor Nixon disputed or protested the five-dollar ($5.00) facsimile fee during or after the loan closing.  Nixon used the payoff statement to prepare the HUD-1 Settlement Statement and submitted it to First Financial Bank for approval.  Nixon placed the total amount owed including service fees (the $56,792.64) on line 104 of the HUD-1 Settlement Statement. At Smith's closing, Nixon went over each document that Smith was to sign with her, including the HUD-1 Settlement Statement.  During the loan's refinance, Nixon and Smith also spoke two or three times on the telephone.

Chase claims that the release of the mortgage is not contingent upon the payment of a facsimile fee and it will release a mortgage when it does not receive enough money to pay the service fees listed on the payoff statement.  Smith disputes this assertion with Nixon's deposition testimony that he didn't believe the loan would be released unless the facsimile fee was paid.

Chase has moved for summary judgment in its favor on the entirety of Smith's claims. Guided by the following standard of review, the Court will consider each of Chase's contentions in turn.

## II.   **Discussion**

The standard of review for a motion for summary judgment is familiar and established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); Krenik v. County of Le Sueur, 47 F.3d 953 (8th Cir. 1995).

The Supreme Court has issued the following guidelines to help determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is
> a need for trial . . . whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because they may
> reasonably be resolved in favor of either party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  See also Agristor Leasing v. Farrow, 826 F.2d 372 (8th Cir. 1987); Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund, 800 F.2d 742, 746 (8th Cir. 1986).

The burden of proof is on the moving party to set forth the basis of its motion.  Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002), citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986).  The Court must view all facts and inferences in the light most favorable to the nonmoving party.  Id., citing Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  The Eight Circuit Court of Appeals, in Scheer Const. Co. v. Greater Huron Development Corp., 700 F.2d 463, 465 (8th Cir. 1983), quoting Burst v. Adolph Coors Co., 650 F.2d 930, 932 (8th Cir. 1981), in a case involving the entry of summary judgment, stated:

> [w]hen a motion for summary judgment is made and supported by affidavits, the
> party opposing the motion may not rest on the allegations in his pleadings but
> must resist the motion by setting forth specific facts that raise a genuine issue
> of fact for trial.

Where the party moving for summary judgment does not bear the burden of proof at trial, the party must demonstrate that there is an absence of evidence to support the non-moving party's case.  Buck v. F.D.I.C., 75 F.3d 1285, 1289 (8th Cir. 1996), citing and quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party satisfies this requirement, the burden shifts to the nonmovant who must set forth specific facts showing that there is a genuine issue for trial. Id., citing and quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.  Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 248.

-4-

Guided by this standard of review, the Court considers Chase's summary judgment arguments.

## A.     **The Voluntary Payment Doctrine**

Chase argues because Nixon, a person who Chase argues was Smith's agent, knowingly incurred the five-dollar ($5.00) fax fee when he requested Chase send a payoff statement for Smith's account to him by facsimile on an expedited basis, the voluntary payment doctrine bars all of Smith's claims. First, we must consider whether Nixon was Smith's agent and, if so, whether he had the authority to incur the fax fee.

Under Arkansas law, an agency relationship is created as a result of the conduct of two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents to so act. Evans v. White, 682 S.W.2d 733, 734 (Ark. 1985). A delegation of authority pursuant to an agency relationship carries with it the power to do all those things that are necessary, proper, usual and reasonable to be done in order to effectuate the purpose for which it was created. Foundation Telecommunications, Inc. v. Moe Studio, Inc., 16 S.W.3d 531, 536 (Ark. 2000). No genuine issue remains as to whether Nixon was Smith's closing agent and whether or not he had the authority to incur the fee in order to effectuate the closing of Smith's refinance. Further, the Court is unsure that Smith could recover on any of her claims if we were to hold otherwise.

Because Nixon was Smith's agent and because he incurred the fee within his agency power, the question the Court must address is whether or not the voluntary payment doctrine bars Smith's state-law breach of contract claims. The Court is convinced that it does and no reasonable jury could find otherwise.

Under Arkansas law, when a person knowingly and voluntarily makes a payment of money, that person cannot later recover the payment even if the demand for payment was not legally enforceable. Vandiver v. Banks, 962 S.W.2d 349, 352-353 (Ark. 1998). The undisputed facts show that Nixon was aware of the fax fee, aware of the amount of the fax fee, paid it, and did not protest it. Smith argues that genuine issues exist as to whether or not the defense of

duress to the voluntary payment doctrine applies.  Nixon testified in his deposition that he believed the loan would not have been released if he had not paid the fax fee, but it is unclear whether this is based on his personal knowledge or speculation.  Further, the undisputed facts demonstrate that the payoff statement could have been mailed to Nixon for free, and the payoff statement was mailed to Smith, at no charge to her.  With respect to Smith's defense of duress, the Court finds the reasoning of the Alabama Supreme Court in <u>Stone v. Mellon Mortgage</u>, 771 So.2d 451 (Ala. 2002) persuasive.  <u>Stone</u>, like this lawsuit, involved a challenge to a facsimile fee charged in connection with the provision of a payoff statement during a mortgage refinancing. The Court found that the voluntary payment doctrine defeated the plaintiffs' claims for monies had and received and unjust enrichment.  The Court rejected the plaintiffs' defenses to the voluntary payment doctrine of duress and mistake of fact.  The Court held:

> Although evidence of duress or mistake can limit the application of the voluntary-payment doctrine, we find no such evidence in this case.  First [the closing agent] requested the faxed information a month before the closing.  For all that appears, the [plaintiffs] had a reasonable alternative; they could have gotten the payoff statement by mail, free of charge.  But even if the urgency of the situation had required the use of the facsimile transmission rather than the regular mail service–and the record does not suggest that it did–the [plaintiffs] failure to challenge the payment until nearly three years after the duress had been lifted, destroys any reasonable factual basis for a finding of duress.

<u>Stone</u> , 771 So.2d at 457.  Because the voluntary payment doctrine bars Smith's breach of contract claims, the Court will not consider their underlying merit.  The Court will assume for purposes of this opinion that the  voluntary payment doctrine has no application to Smith's federal law claims, and turn to these allegations.

### B.    **RESPA, 12 U.S.C. § 2605.**

RESPA, 12 U.S.C. § 2605(e), requires a loan servicer (like Chase) to provide certain information to a lender upon a "qualified written request."  In this case, Smith's agent Nixon requested a payoff statement from Chase.  Chase sent Nixon the payoff statement by facsimile and charged five dollars ($5.00).  Although this section does not explicitly prohibit charging fees for providing this information, Smith argues that Chase is prohibited from charging for

something that it is legally required to provide.

The Court will assume that Nixon's telephone request for the payoff statement is a qualified written request. Nevertheless, Chase is entitled to summary judgment for two reasons. First, the fax fee could only be reasonably construed as just that–a fax fee. Nixon could have received the same payoff information for free on a non-expedited basis though the U.S. Mail. Second, nothing in § 2605(e) prohibits Chase from charging a fee for providing a payoff statement. The second ground for this opinion is similar to this Court's conclusion in Eddie and Susan Watt v. GMAC Mortgage Corp., where we held:

> RESPA does not prohibit the imposing of fees by a lender for information in response to a request under 12 U.S.C. § 2605(e). In their complaint, the Watts allege just that–that GMAC charged them for a payoff statement in response to their qualified written request under § 2605(e). Therefore, the fees charged by GMAC were not in violation of RESPA. These facts in the complaint cannot, as a matter of law, state a claim for relief under RESPA. Therefore, GMAC's Motion to dismiss as to the Watts' § 2605(e) claims should be granted.

> Eddie and Susan Watt v. GMAC Mortgage Corp., No. 03-1179, slip. op. (W.D. Ark. August 1, 2005).

Chase is entitled to summary judgment on Smith's § 2605(e) RESPA claim.

### C. **RESPA 12 U.S.C. § 2610**.

Smith's final claim is brought pursuant to 12 U.S.C. § 2610 of RESPA. This section explicitly prohibits the charging of fees (unlike 12 U.S.C. § 2605(e)) by a loan servicer in connection with the preparation of a HUD-1 Settlement Statement. The undisputed facts in this lawsuit show that Nixon used the payoff statement to prepare the HUD-1 Settlement Statement: Nixon placed the total amount owed including service fees (the $56,792.64) on line 104 of the HUD-1 Settlement Statement. Chase's only part in preparing the settlement statement was sending Nixon the payoff statement. The Court finds it a logical stretch to see how Chase violated this section by simply charging a fee for providing information (on an expedited basis by facsimile) that another party used to prepare a HUD-1 Settlement. Chase is entitled to summary judgment on Smith's RESPA claims.

### III.     Conclusion

For the foregoing reasons, the Court finds the Motion for Summary Judgment should be and hereby is **granted**, and Smith's lawsuit is hereby dismissed with prejudice.  A Judgment of even date, consistent with this Memorandum Opinion will issue.  All other pending motions are hereby denied as moot.

**IT IS SO ORDERED** this 16th day of February, 2006.


/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Judge